In re:                                                          Case No. 25-26829-kmp
City on a Hill, Inc.,                                           Chapter 11 (Subchapter V)
                            Debtor.

## NOTICE OF MOTION TO DISMISS CHAPTER 11 CASE

PLEASE TAKE NOTICE that City on a Hill, Inc. (the "Debtor"), by its counsel, Swanson Sweet LLP, has filed a Motion to Dismiss Chapter 11 Case (the "Motion").

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in the bankruptcy case. If you do not have an attorney, you may wish to consult one.**

If you do not want the Court to grant the Motion, or if you want the Court to consider your views on the matter, then under Federal Rule of Bankruptcy Procedure 2002(a)(4) and Local Rule 9013-4(b)(1), no later than **twenty-one days after the date of this notice**, you or your attorney must:

1. File with the Court a written objection at:

    Clerk of the U. S. Bankruptcy Court
    Room 126, Federal Courthouse
    517 E. Wisconsin Avenue
    Milwaukee, WI 53202

If you mail your objection to the Court for filing, you must mail it early enough so the Court will receive it on or before the date stated above.

2. You must also mail a copy to:

    Office of the U. S. Trustee                Swanson Sweet LLP
    517 E. Wisconsin Ave., Room 430            107 Church Avenue
    Milwaukee, WI 53202                        Oshkosh, WI 54901

1

PLEASE TAKE FURTHER NOTICE that if any party timely files an objection, the Court will hold a hearing to consider the Motion on **Thursday, April 16, 2026 at 9:30 a.m.** in Room 167 of the United States Courthouse, located at 517 East Wisconsin Avenue in Milwaukee, Wisconsin.

Any objection should briefly state the grounds for such objection. If no objections are filed, the Court may cancel the hearing and enter an order granting the relief requested in the Motion.

Dated: March 20, 2026.        SWANSON SWEET LLP

By:       /s/ Peter T. Nowak
Paul G. Swanson
Peter T. Nowak
107 Church Avenue
Oshkosh, WI 54901
Tel: (920) 235-6690; Fax: (920) 426-5530
pswanson@swansonsweet.com
pnowak@swansonsweet.com

***Counsel for the Debtor***

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:                                              Case No. 25-26829-kmp
City on a Hill, Inc.,                               Chapter 11 (Subchapter V)
                        Debtor.

## MOTION TO DISMISS CHAPTER 11 CASE

City on a Hill, Inc. (the "Debtor"), by its counsel, Swanson Sweet LLP, hereby moves the Court to voluntarily dismiss its Chapter 11 case. In support of its motion, the Debtor states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) as a matter concerning the administration of the Debtor's bankruptcy estate. Venue is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The legal predicate for the relief requested is 11 U.S.C. § 1112.

### BACKGROUND

2.      On December 5, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and elected to proceed under Subchapter V. The Debtor remains in possession of its assets and is managing its affairs as a debtor in possession in accordance with 11 U.S.C. § 1184.

3.      The Debtor is a 501(c)(3) tax exempt, non-stock corporation which provides three critical ministries for the uninsured and underserved residents of Milwaukee's central city: (1) the Debtor provides healthcare, dental care, and social services; (2) the Debtor offers a variety of youth and family programs that provide emotional, social, and academic support; and (3) the

1

Debtor provides training opportunities and experiences to mobilize and equip individuals with tools to improve the well-being of their community.

4. The Debtor filed this Chapter 11 case with the goal of reorganizing its financial affairs so that it could continue providing those services to the community. The Debtor intended to increase fundraising revenue, restructure its debt, including various high-interest debt that drained the Debtor's cash flow, and emerge a stronger, more financially-sound organization.

5. Unfortunately, after several weeks of contemplating a plan of reorganization, the Debtor has decided that it cannot effectively address its financial challenges through this Chapter 11 proceeding. The Debtor's Board of Directors voted to wind down the Debtor's operations as of Friday, April 3, 2026, and the Debtor will work with its remaining employees to transition services and refer program beneficiaries to other providers.

6. As explained in other pleadings, the Debtor's operations are heavily dependent on fundraising. *See* ECF No. 110. To that point, over the past several years, donations, grants, and third-party contributions have represented between eighty to ninety percent of the Debtor's total revenue. The Debtor's pre-petition challenges were in part caused by several months of below-average fundraising (in addition to unsustainable debt service).

7. Mindful of the importance of fundraising, the Debtor's management worked to reestablish the Debtor's fundraising capabilities after this case was filed. The Debtor was hopeful that fundraising would increase once the Debtor filed its petition, explained its financial circumstances and outlook for the future, and reengaged with donors. The Debtor also implemented various strategies to increase fundraising, such as reconnecting the Debtor to its original, faith-based roots, working closely with a fundraising consultant to implement a short and long-term strategic plan to maximize the Debtor's fundraising capabilities, and contacting

2

founding members, critical donors, and key stakeholders to ask for their financial support. While the Debtor implemented those strategies, the Debtor recognized that the results would not be instantaneous and that it needed post-petition financing to support its operations through confirmation. The Debtor obtained, and the Court approved, a $250,000 post-petition credit facility for that purpose. ECF Nos. 75, 91, 101.

8. Over the past several weeks, the Debtor has seen some marginal improvement with fundraising while the post-petition credit facility has supported operations. However, the gap between revenue and operating expenses is substantial. While the Debtor believed that it could close some of that gap over the next few weeks, *see* ECF No. 110, it has become clear that without a *substantial and immediate* increase in revenue from fundraising or other sources, the Debtor cannot meet its operating expenses (let alone service debt in a plan of reorganization). If the Milwaukee Economic Development Corporation allows the Debtor to draw more from the post-petition credit facility, the Debtor has funds to sustain minimal operations through April 3, 2026.

9. Unfortunately, there is no simple solution that provides the Debtor with a substantial and immediate increase in revenue beyond that date. The Debtor is not a candidate for additional post-petition financing (it cannot support its current debt obligations, and it has already pledged its assets as collateral), and major donors appear to recognize the Debtor's tenuous financial position.[1] Without adequate financial resources to operate, the Debtor has

---

[1] The Debtor's fundraising will cease on March 31, 2026. The Department of Financial Institutions issued a notice of its intent to revoke the Debtor's registration as a chartable organization because the Debtor did not file an annual financial report for 2024. *See* Wis. Stat. § 202.12(3). This required financial report requires an "audited financial statement" and the opinion of an "independent certified public accountant" on the financial statement. Wis. Stat. § 202.12(3)(b). The Debtor attempted to re-engage CliftonLarsonAllen to complete the audit, but the firm declined to continue its audit work (and its pre-petition fees precluded the firm's engagement without some agreement to waive a portion of its fees, *see* 11 U.S.C. § 1195). The Debtor has attempted to engage other accountants, but will abandon those efforts now that the Debtor will no longer operate as a charitable organization.

3

decided that it should dismiss this Chapter 11 case and wind down its affairs outside of

bankruptcy.[2]

**REQUEST FOR RELIEF**

10.     Section 1112 provides the Court "shall convert a case under this chapter to a case

under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors

and the estate, for cause[.]"  11 U.S.C. § 1112(b)(1).  The statute provides a non-exhaustive list

of grounds which constitute "cause," including the continuing diminution of the estate and the

absence of a reasonable likelihood of rehabilitation.  11 U.S.C. § 1112(b)(4)(A).  However, many

of these grounds may not apply when a chapter 11 debtor seeks a voluntary dismissal.  *See In re*

*Brewery Park Assocs., L.P.*, No. 10-11555, 2011 WL 1980289, at *15 (Bankr. E.D. Pa. Apr. 29,

2011) (citing *In re Forum Health*, No. 09-40795, 2011 WL 1134323, at *5 (Bankr. N.D. Ohio

Mar. 17 2011)).  For that reason, "some courts have focused upon factors such as whether the

valid purpose of chapter 11—reorganization (or liquidation) to maximize the value of the estate

or preserve going concern value, […]—no longer exists or can be better achieved outside the

chapter 11 context."  *Id.* at *16 (internal citation omitted).  For example:

> [B]ecause of postpetition actions there may no longer be any
> business to reorganize, or there may be a lack of assets to
> administer, in a chapter 11; there may have been a material change
> in circumstances postpetition such that confirmation of a chapter
> 11 plan is no longer possible; the legitimate purpose intended by
> the debtor's chapter 11 bankruptcy filing may have been achieved
> through settlement of litigation; or all interested parties may agree
> that continuation of the chapter 11 case is not in their respective
> best interests.

---

[2] The Debtor also has faced challenges with its insurance policies from Church Mutual (which were renewed in January).  The Debtor inadvertently missed its first payment in January, and Church Mutual proceeded to cancel the policies for non-payment.  The Debtor then paid Church Mutual once it learned of the missed payment, believing that Church Mutual wound reinstate the policies.  However, Church Mutual has declined to do so even though the Debtor has offered a "no known loss" letter.  The Debtor worked with Attorney Monte Weiss to reinstate the policies with Church Mutual, and simultaneously pursued new policies.  The Debtor recently obtained new policies, but the Debtor cannot sustain the insurance costs for a prolonged period.

4

*Id.* (citations omitted).

11.     The Debtor submits that cause exists to dismiss its Chapter 11 case because confirmation of a Chapter 11 plan is no longer possible given the Debtor's ongoing financial challenges.

12.     Given the existence of cause under Section 1112(b)(1), the Debtor submits that dismissal of its case is the appropriate remedy and is in the best interests of creditors and the bankruptcy estate.  In deciding between conversion and dismissal, bankruptcy courts consider several factors:

(1)     Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal.

(2)     Whether there would be a loss of rights granted in the case if it were dismissed rather than converted.

(3)     Whether the debtor would simply file a further case upon dismissal.

(4)     The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors.

(5)     In assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise.

(6)     Whether any remaining issues would be better resolved outside the bankruptcy forum.

(7)     Whether the estate consists of a "single asset."

(8)     Whether the debtor has engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.

(9)     Whether a plan has been confirmed and whether any property remains in the estate to be administered.

(10)     Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

5

*In re Green Box NA Green Bay, LLC*, 579 B.R. 504, 511 (Bankr. E.D. Wis. 2017) (citation omitted); *In re H2D Motorcycle Ventures, LLC*, 617 B.R. 625, 634 (Bankr. E.D. Wis. 2020).

13. In this Chapter 11 case, nearly all the factors support dismissal instead of conversion:

- Factor 1 (Avoidance Actions): The Debtor does not believe that there are viable avoidance actions for a Chapter 7 trustee to pursue. The payments to creditors within ninety days of the case are likely protected by various affirmative defenses under Section 547(c), including the ordinary course of business defense and the subsequent new value defense. *See* ECF No. 60 at 39–40.

- Factor 2 (Loss of Rights): The Debtor believes that dismissal would not result in any loss of rights granted in this Chapter 11 case. The Debtor seeks nothing more than a straight dismissal of its case so that it can transition services to other providers, work with its secured creditors to surrender collateral, and wind-up its affairs outside of bankruptcy.

- Factor 3 (Refiling): The Debtor does not intend to re-file a bankruptcy case upon dismissal. Chapter 11 is designed for debtors to reorganize an operating business through a plan, and the Debtor has concluded that it cannot propose a confirmable plan of reorganization.

- Factor 4 (Assets): The Debtor has pledged substantially all its assets to its secured creditors (BMO Bank, N.A., the Wisconsin and Northern Michigan District Council of the Assemblies of God, and the Milwaukee Economic Development Corporation). The Debtor will use any remaining cash on hand and proceeds from unencumbered assets to pay remaining personnel expenses, professional fees, and other necessary expenses (such as final W2s and tax returns).

- Factor 6 (Remaining Issues): The remaining issues (transitioning services, disbursing restricted funds, preparing final tax returns, etc.) are better and more efficiently resolved outside of the bankruptcy forum. The Debtor and its remaining employees are best positioned to transition the Debtor's charitable services, and refer program beneficiaries, to new providers to mitigate any interruption for those who rely on the Debtor. The Debtor is also best positioned to terminate various grant programs and withdraw grant requests, and properly resolve various restricted funds currently on hand.

- Factor 8 (Misconduct): The Debtor has not engaged in misconduct during this Chapter 11 proceeding, and creditors are not in need of a Chapter 7 trustee to protect their interests. To the contrary, the Debtor has always worked in good

6

faith to reorganize.  Unfortunately, the Debtor has determined that it cannot do so.

- Factor 9 (Administering Assets):  The Debtor has not confirmed a plan of reorganization and there would be only minimal assets to administer in a Chapter 7 proceeding.

- Factor 10 (Environmental or Safety Concerns):  There are no environmental or safety concerns for the Debtor that would require the appointment of a Chapter 7 trustee.

14.     The remaining factors are either inapplicable or neutral.  For instance, neither conversion nor dismissal will maximize the value of the Debtor's estate as an economic enterprise; the Debtor does not have any viable, long-term operation to reorganize under Chapter 11 (despite the Debtor's best efforts and genuine desire to continue providing services to the community).  Accordingly, the Debtor believes that dismissal of this Chapter 11 case—and not conversion—is in the best interests of creditors and the estate.  There is no purpose incurring additional administrative expenses necessary to propose a plan of reorganization, nor any benefit to converting this case to Chapter 7.

## RELATED RELIEF

15.     The Debtor understands that the Subchapter V Trustee may want to file a final application for compensation.  Other professionals may want to do the same.  Accordingly, the Debtor requests that the Court impose a deadline for the Subchapter V Trustee and professionals to file final applications for compensation and retain jurisdiction to consider those applications. The Debtor proposes April 24, 2026, as the deadline (assuming no party objects to this motion).

WHEREFORE, the Debtor respectfully requests that the Court enter an order (A) dismissing this Chapter 11 case; (B) setting April 24, 2026, as the deadline for professionals to file final applications for compensation; and (C) granting such other relief as the Court deems just and appropriate.  A proposed order is attached hereto as **Exhibit A**.

7

Dated: March 20, 2026.                    SWANSON SWEET LLP

By:      /s/ Peter T. Nowak
                             Paul G. Swanson
                             Peter T. Nowak
                             107 Church Avenue
                             Oshkosh, WI 54901
                             Tel: (920) 235-6690; Fax: (920) 426-5530
                             pswanson@swansonsweet.com
                             pnowak@swansonsweet.com

***Counsel for the Debtor***

8

# <u>EXHIBIT A</u>

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:                                                    Case No. 25-26829-kmp
City on a Hill, Inc.,                                     Chapter 11 (Subchapter V)
                    Debtor.

**ORDER DISMISSING CASE**

City on a Hill, Inc. filed a Motion to Dismiss Chapter 11 Case. No objections were filed. Accordingly, based on the record,

IT IS HEREBY ORDERED that this case is dismissed, effective immediately.

IT IS FURTHER ORDERED that the Subchapter V Trustee and all professionals must file any final applications for compensation on or before April 24, 2026. The Court will retain jurisdiction to consider any final applications for compensation.

#####

1